UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| ZELMA BRAWNER, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA NATIONAL ASSOCIATION, a business entity, form unknown, and DOES 1 through 25,<br><br>Defendants. | No. 3:14-cv-02702-LB<br><br>ORDER APPROVING SETTLEMENT, DISMISSING CASE WITH PREJUDICE, AND ENTERING FINAL JUDGMENT<br><br>[Re: ECF Nos. 59, 60] |

## INTRODUCTION

The plaintiff Zelma Brawner sued her former employer, the defendant Bank of America, N.A., alleging that the bank misclassified her and other customer-service representatives as administrative employees who were exempt from California's overtime and other labor laws. (Compl., ECF No. 1-1.[1]) She alleged five claims: 1) failure to pay overtime wages in violation of California Labor Code § 1194(a); 2) failure to provide accurate itemized wage statements in violation of California Labor Code § 226(e); 3) willful failure to pay all wages due within 72 hours after separation from employment in violation of California Labor Code §§ 201, 202, and 203; 4) a resulting violation of California's unfair competition law ("UCL"), California Business and Professions Code § 17200;

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated numbers at the tops of documents.

Order (No. 3:14-cv-02702-LB)

and 5) a violation of the Labor Code Private Attorneys General Act ("PAGA"), California Labor Code § 2698 *et seq.* (*Id.* at 4-6.) The parties settled the case, and the court granted the plaintiff's unopposed motion for preliminary approval of the proposed class-action settlement. (*See* 9/10/15 Order, ECF No. 57.) The plaintiffs now move for final approval of the settlement, attorney's fees of $562,500, litigation expenses of $10,537.04, claims-administration expenses of $9,000, and a $15,000 incentive award to the named plaintiff; the defendant does not oppose the motion. (*See* Motions, ECF Nos. 59, 60.) The court held a fairness hearing on January 14, 2016. (1/14/2016 Minute Order, ECF No. 63.) The court finds the settlement fair, adequate, and reasonable and approves the final settlement, including fees, costs, administration expenses, and the incentive award.

**STATEMENT**

**I. THE LAWSUIT TO DATE**

The plaintiff filed the lawsuit in May 2014. (Compl., ECF No. 1-1.) The parties consented to the undersigned's jurisdiction. (*See* ECF Nos. 31, 32.) After mediation with Mark Rudy, Esq., they settled the case. (*See* Joint Case-Management Statements, ECF Nos. 41 at 6, 47 at 2; Motion, ECF No. 53; Notice, ECF No. 55.)

**II. THE SETTLEMENT**

The total settlement amount is $2,250,000, which will be allocated as follows: 1) $1,626,000 (or 72%) to the class members to be distributed based on a formula weighted by annual salary, estimated weekly overtime hours, and eligible work weeks, apportioned among wage and non-wage claims (1/3 to wages, 1/3 to penalties, and 1/3 to interest); 2) $562,500 (or 25%) for attorney's fees; 3) litigation costs of $10,537.04 (estimated at $5,000 to $15,000 in the settlement agreement); 4) $15,000 to the class representative; 5) a $30,000 PAGA penalty, with $22,500 paid to the California Labor & Workforce Development Agency and $7,500 paid to the class members in proportion to their individual settlement shares; and 6) $9,000 to the claims administrator. (Motion, ECF No. 53 at 8; *see* Joint Stipulation for Class Action Settlement, ECF No. 53-1 at 14-18, ¶¶ 33-37; Motion, ECF No. 59 at 6-7; Motion for Fees and Costs, ECF No. 60 at 4.) The settlement agreement specifies that the costs of administering the settlement up to $20,000 will be taken out of the gross settlement fund

of $2,250,000, and the defendant will pay costs above $20,000. (*See* ECF No. 53-1at 10, ¶ 21, and 14, ¶ 33.) Any unused funds of the $20,000 allocated to the claims administration will be paid as a *cy pres* distribution to Bay Area Legal Aid, subject to approval by the court. (*Id.* at 15, ¶ 33.)

The "Plaintiff Class" is defined as "all persons employed by Defendant in its internal job codes CI049 and CI053, also known as Dedicated Service Directors, Treasury Services Consultants and/or Senior Treasury Service Consultants, in Concord, California from May 9, 2010 through the date the Court enters judgment in accordance with the terms of this Settlement Agreement." (*Id.* at 7, ¶ 5.) The "Settlement Class" is "all members of the Plaintiff Class who fail to timely and/or properly exclude themselves from the settlement." (*Id.* ¶ 6.) There are 116 employees that Bank of America has identified as class members. (Motion, ECF No. 53 at 9.)

## III. NOTICE TO THE CLASS

The claims administrator is KCC, which capped its fees and costs at $9,000. (Joint Stipulation for Class Action Settlement, ECF No. 53-1 at 19, ¶ 40.) Its responsibilities are defined in the settlement agreement and include: 1) distributing the class notice and claims form; 2) calculating individual payments; 3) calculating the payroll tax; 4) calculating interest; 5) preparing disbursements to class members, counsel, the California Labor & Workforce Development Agency, and tax authorities; 6) handling inquiries or disputes about the calculation of the settlement awards; 7) coordinating with the defendant to report and remit all payroll taxes to the California Employment Development Department and other tax agencies; 8) establishing an email address and toll-free number to direct inquiries regarding the class notice, the claim form, and determination of individual shares; 9) sending the court-approved notice to the class members via first-class mail, and 10) skip-tracing returned mail and re-sending notice to the new addresses it identified. (*Id.* at 19-20, ¶¶ 40-43.)

KCC complied with all requirements, including obtaining the defendant's computerized list of the 133 class members, updating the addresses, and mailing the notices and claim forms. (Shawver Decl., ECF No. 59-1 at 8-9, ¶¶ 3-8.) Only two packets were returned as undeliverable; KCC conducted address searches for the two class members using credit and other public-source databases but did not find new addresses. (*Id.* at 9, ¶ 9.) It handled 30 calls on the toll-free number and provided 15 notice packets to callers. (*Id.* ¶ 10.) It has received no requests for exclusions and no

Order (No. 3:14-cv-02702-LB)

objections to the settlement. (*Id.* ¶¶ 11, 12; Shawver Supp. Decl., ECF No. 62-1 at 2.) As of December 9, 2015, 106 claim forms have been filed. (Shawver Decl., ECF No. 59-1, ¶ 13.)

## ANALYSIS

### I. JURISDICTION

The court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

### II. CERTIFICATION OF CLASS

The court confirms its previous certification of the following settlement class, for settlement purposes only, under Federal Rule of Civil Procedure 23(b)(3). (*See* 9/10/15 Order, ECF No. 57 at 4-5.) The "Settlement Class" is "all members of the Plaintiff Class who fail to timely and/or properly exclude themselves from the settlement." The "Plaintiff Class" is defined as "all persons employed by Defendant in its internal job codes CI049 and CI053, also known as Dedicated Service Directors, Treasury Services Consultants and/or Senior Treasury Service Consultants, in Concord, California from May 9, 2010 through the date the Court enters judgment in accordance with the terms of this Settlement Agreement."

### III. CLASS REPRESENTATIVE, CLASS COUNSEL, AND CLAIMS ADMINISTRATOR

The court confirms its previous appointment of the plaintiff Zelma Brawner as the class representative, finding that she has claims that are typical of the claims of class members generally and that she is an adequate representative of the other members of the class. (*See id.* at 5.)

The court confirms its previous appointment of Joseph Clapp, Esq., of Aiman-Smith & Marcy as class counsel for settlement purposes only and finds that he 1) has sufficient qualifications, experience, and expertise in prosecuting class action cases and 2) has represented the settlement class adequately for purposes of entering into and implementing the settlement. (*See id.*)

The court confirms its prior appointment of KCC as the Claims Administrator. (*See id.* at 6.)

### IV. NOTICE

As described above, the claims administrator provided notice to all members of the class in the form previously approved by the court. The notice met all legal requisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the Settlement, met the requirements of due process, and complied with the court's order

regarding notice. (*See* 9/1015 Order, ECF No. 57 at 7.)

## V. COMPLIANCE WITH CLASS ACTION FAIRNESS ACT

On August 13, 2015, the defendant provided the required notice to federal and state regulators showing compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. (*See id.* at 8.) The notice met the requirements of 28 U.S.C. § 1715 and was made more than 90 days before the final approval hearing on September 24, 2015. *See* 28 U.S.C. § 1715(d).

## VI. FINAL APPROVAL OF SETTLEMENT

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiff's fiduciary obligations to the class. See *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: 1) the strength of the plaintiff's case; 2) the risk, expense, complexity, and likely duration of further litigation; 3) the risk of maintaining class-action status throughout trial; 4) the amount offered in settlement; 5) the extent of discovery completed and the stage of the proceeding; 6) the experience and views of counsel; 7) the presence of a government participant; and 8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); *see, e.g., Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004).

The court finds the settlement fair, adequate, and reasonable under the *Hanlon* factors.

First, litigation poses risks and is expensive, and an evaluation of the strengths and weaknesses of

the plaintiff's and the defendant's cases militates in favor of settlement. The class members provided account services to major corporate accounts; a jury might find that the work was crucial to the bank's core business and to the customers' business operations. It also might find that the employees customarily and regularly exercised discretion and independent judgment. In short, as the plaintiff points out, there are triable issues about whether the bank properly classified the employees as exempt administrative employees. (Motion, ECF No. 59 at 10.)

Second, the settlement treats class members fairly, allocating the money to them based on a formula weighted by their annual salary, estimated overtime hours, and eligible work weeks. The class members are represented by experienced and informed counsel. After the court ordered production of the class members' names and contact information, class counsel contacted every class member. (*See* Clapp Decl., ECF No. 59-1 at 4-5, ¶¶ 7-9.) The parties mediated the case with a respected mediator and with his assistance over the course of months, reached their agreement. (*Id.* at 5, ¶ 11.) Finally, no class members object or have opted out.

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" and thus approves the settlement. *See Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

## VII. ATTORNEY'S FEES AND EXPENSES

Class counsel asks for $562,500 (or 25%) for attorney's fees and $10,537.04 in costs.

Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fee provisions included in proposed class-action settlements must be reasonable. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the amount of attorney's fees. *See id.* at 942-43. The Ninth Circuit has instructed district courts to review class fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

In common-fund cases, the Ninth Circuit requires district courts to assess proposed fee awards under either the "lodestar" method or the "percentage of the fund" method. *See Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon*, 150 F.3d at 1029. The court finds that the fee request here is reasonable under both approaches.

Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the total settlement. The Ninth Circuit has established a "benchmark" that fees should equal 25% of the settlement, although courts diverge from the benchmark based on a variety of factors, including "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, 2013 WL 1222058, *2 (E.D. Cal. Mar. 25, 2013); *see also Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Pacific Enterprises*, 47 F.3d at 379 (same); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Pokorny v. Quixtar, Inc.,* 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Privacy Litig.*, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief").

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed. *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, *23 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available) (quoted language from *Young*)).

After applying the percentage method, courts typically roughly calculate the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See*, *e.g., Weeks v. Kellogg Co.,* 2013

WL 6531177, *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226-27 (1980); *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 624 (1976); *Clejan v. Reisman*, 5 Cal. App. 3d 224, 241 (1970). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc*., 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Id*.

Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Based on the declarations submitted by the plaintiff's counsel, the court finds that the lodestar is $346,845 (after write-offs for unnecessary or duplicative hours).(Clapp Decl., ECF No. 60-1 at 6-7, ¶¶ 23-25.) The billing rates are within normal and customary ranges for time keepers with similar qualifications and experience in the San Francisco market. The attorneys submitted their billling records; they detail their efforts sufficiently. The rates counsel used are appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment . . . .") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re Washington Pub. Power Supply Sys. Secs. Litig.,* 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement."). The court finds it appropriate to apply a multiplier of two, which aligns the lodestar with the 25% benchmark request.

In sum, the court finds the fee request reasonable under the "percentage of the fund" approach and

supported by the lodestar cross-check. The court also finds the expenses to be appropriate and supported by the submissions. The fees and costs will not reduce the amounts paid to class members. The court approves and awards $562,500 for attorney's fees and $10,537.04 in costs.

The court also approves and authorizes payment of $9,000 in claims-administration expenses.

## VIII. INCENTIVE AWARDS

The proposed award to Ms. Brawner is $15,000. It will not reduce the payments to the class members.

District courts must evaluate proposed incentive awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59 (citation omitted).

The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975-78). The Ninth Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

There is one named plaintiff; her lawyer described her efforts, including explaining how the job worked, strategizing about how to prosecute the case, participating in discovery and depositions, and engaging in mediations and negotiations. (Clapper Decl., ECF No. 60-1 at 8, ¶ 26.) He estimates that she spent 80 to 100 hours and also assumed the risk of paying costs personally if the defendant prevailed in the case. (*Id.* ¶¶ 28-29.) The court approves the award.

## IX. OTHER ORDERS

The following paragraphs are included in the parties' stipulated proposed order granting final approval of the class-action settlement. (*See* Proposed Order, ECF No. 62.) The court thus orders the following:

Order (No. 3:14-cv-02702-LB)

9

1. The Settlement Agreement is hereby incorporated into this order and final judgment, and all terms used herein shall have the same meanings set forth in the Settlement Agreement.

2. The lawsuits and all individual and class claims contained therein, including all of the Released Claims, are dismissed with prejudice and on the merits as to the Class Representative and all other Settlement Class Members, and as against each and all of the Released Parties, without fees or costs except as provided in the Settlement Agreement, in this Order and Final Judgment.

3. As of the Effective Date of the settlement, the Class Representative and all other Settlement Class Members, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have received actual notice of the settlement, have conclusively compromised, settled, discharged, and released all Released Claims against the defendant and the Released Parties, and are bound by the provisions of the Settlement Agreement.

4. This order and final judgment shall be binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the Class Representative and all other Settlement Class Members, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether the Settlement Class Member previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Released Claims, and even if such Settlement Class Member never received actual notice of the lawsuits or the settlement.

5. The court permanently bars and enjoins the Class Representative and all other Settlement Class Members from (i) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the Released Claims and (ii) organizing Settlement Class Members into a separate group, class, or subclass for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending

complaint to include class allegations, or seeking class certification in a pending action) based on the Released Claims.

6. The Settlement Agreement and the settlement provided for therein, and any proceedings taken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, a presumption, concession, or an admission by any Party of liability or non-liability or of the certifiability or non-certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made by any Party; provided, however, that reference may be made to the Settlement Agreement and the settlement provided for therein in such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement.

7. Without further approval from the court, the Parties are authorized to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement, including all Exhibits thereto, as (i) shall be consistent in all material respects with this order and final Judgment and (ii) do not limit the rights of Settlement Class Members.

8. The court orders that the certification of the Settlement Class and final approval of the settlement, and all actions associated with them, are undertaken on the condition that they shall be vacated if the Settlement Agreement is terminated or disapproved in whole or in part by any appellate court or other court of review, or if the settlement does not become final for any other reason, in which event the Settlement Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as evidence for any purpose, including but not limited to an admission by any Party or liability or non-liability or of any misrepresentation or omission in any statement or written document approved or made by any Party, or of the certifiability of a litigation class, or otherwise be used by any Person for any purpose whatsoever, in any trial of these Lawsuits or any other action or proceedings, as further provided in the Settlement Agreement.

9. The court finds that the settlement is in good faith under federal law and California Code of Civil Procedure 877.6, including that the amount to be paid in the settlement is in accord with the Class Representative's and the Settlement Class Members' potential total recovery and the defendant's potential liability; that the allocation of the settlement is fair; that the settlement is not

1  meant to be the equivalent of liability damages; and that the settlement is not the product of and does
2  not evince collusion, fraud, or tortious conduct.

3  10. Except as otherwise provided by this order, the parties will bear their own costs and
4  attorney's fees.

5  11. The court finds that this order disposes of all claims and all parties and so is a final judgment.
6  The court directs that this matter be dismissed with prejudice, and hereby enters final judgment.

7  12. Without affecting the finality of this order and final judgment, the court retains jurisdiction
8  over the Class Representative, the Settlement Class, and the defendant as to all matters concerning the
9  administration, consummation, implementation, interpretation, and enforcement of the Settlement
10 Agreement.

## CONCLUSION

The court grants the unopposed motion to approve the class-action settlement, approves the settlement, awards $562,500 in attorney's fees and $10,537.04 in expenses, approves and authorizes the payment of $9,000 in claims-administration expenses, and awards $15,000 to the named plaintiff. Pursuant to the parties' stipulated proposed order at ECF No. 62, the court dismisses the case with prejudice.

This disposes of ECF Nos. 59 and 60.

**IT IS SO ORDERED.**

Dated: January 14, 2016

_____
LAUREL BEELER
United States Magistrate Judge

Order (No. 3:14-cv-02702-LB)
12